Wardlaw, J.
dissenting. There is a difference between abating a nuisance and declaring what shall be a nuisance. For the definition of a nuisance, and consequent, ascertainment of the subjects to which their power of abating or removing may be extended, the council must refer to the general law, just as they must, in requiring the performance of patrol duty, learn from the law what that duty is. In derogation of the ordinary rights of property, they may abate or remove any thing which by law is a nuisance, and in an action against them, proof that a thing was a nuisance, and was therefore removed or destroyed, would constitute their justification. But they have no power to declare that to be a nuisance which is not, or to dispense with other proof of the noxious character of a thing, by shewing that by an ordinance they had declared ■that all such things should be nuisances. If in this way a hog may be declared a nuisance, so might a slave, or any other article which, in the exercise of a capricious discretion, they might chose to consider so.
But in fact the term nuisance does not appear in the ordinance in question; and the attempt to justify the seizure of the hog was not rested upon any assumption or proof that it was technically a nuisance, but upon the efficacy of the ordinance which directed its seizure, and subsequent forfeiture, if certain sums called fines were not paid. An apprehension that hogs might become nuisances in vulgar phrase, that is, troublesome and disagreeable, formed no doubt the reason, and perhaps a very sufficient reason, why the council desired to prevent their coming within the corporate limits. Of that, as a matter affecting, or supposed to affect, the welfare and convenience of the village, the council were the judges, and their decision is just as binding, if it be erroneous, as it would be if it were correct, provided they adopted such means to effect their purpose as the charter authorized. Within the range of subjects to which their power of legislating extended, and not opposing the law of the land, their discretion is the *389 rule; they may direct and may prohibit; but under what sanction? The only sanction is fine. They may, before themselves, and by such proceedings as they have directed, collect fines under twenty dollars, the Court of Common Pleas having jurisdiction as to all fines over twenty dollars. But no other mode of enforcing their ordinances is given, and by necessary implication, arising from the gift of this, all other modes are excluded. They cannot, otherwise than as ordinary majuistrates, imprison or impose other corporal punishment, for violation of an ordinance. They cannot act upon any thing specifically, except in abatement of a nuisance. They may ordain that an act shall not be done, — that a particular state of circumstances shall not exist — under penalty of a fine against him who shall transgress, or permit the transgession, to be collected, after inquiry, before two or more of their body, or before a court; but they cannot arrest the act, or prevent- the state of circumstances, by either a general or a special order, to be executed by themselves or their officer. For example, they might ordain that no garden should be cultivated within the village, and fine any one who should violate the ordinance, toties quoties ; but without shewing a garden to be a nuisance, they could not by their ordinance justify their officer in executing an order to pull down the fences, or plough up the soil, of any garden that might be cultivated. They might ordain that horses should not be fed at a wagon in a street, and fine for a violation; but they could not, without proof of a nuisance, justify a forfeiture of the horses, or removal of them.
It is plain that by the term fine, the charter contemplates a pecuniarly penalty, to be imposed by a court, or a portion of the council exercising judicial power, after investigation of a particular offence alleged, and not a sum to be demanded by an executive officer, without other warrant than his own judgment, as the condition for his deli very of an article seized of his own motion in the execution of a general ordinance. The order of at least two members of the council is essential to the collection of the smallest fine. But if, under an ordinance somewhat differently made, two members of council should direct a *390 particular hog to be seized, advertised, and, as in this case, sold upon non appearance of the owner, and without notice to him, they would be declaring a forfeiture and not collecting a fine.
The case of The State vs. Simons et al. 2 Sp. 761, shews that the power of declaring and enforcing a forfeiture, without the intervention of a jury, cannot be given, even by an Act of the Legislature, to magistrates or courts, except in cases where, by the law of the land, such summary proceeding existed before the adoption of our State constitution, That a power similar to the one claimed by the council of Walterborough, had, before the adoption of the constitution, been exercised by the City Council of Charleston, is, I believe, true; but that that circumstance authorizes the extension of like power to other corporations, does not appear to me to be at all plain. Without examining that question, however, I rest my opinion here upon what seems to me to be the plain provision of the charter of Walterborough, that its ordinance may be enforced by fine, and not otherwise.
The charter of Walterborough may be similar to that of Columbia, but the question which I raise was not at all considered in the case of Kennedy vs. Sowden. That case held that persons not corporators were subject to the ordinances of a corporation, but it decided nothing else.